UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAYLA PICCINI, BRANDI MATTHEWS, and JAYCIE MATTHEWS,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; and DOES 1-25, inclusive;<br><br>　　　　　　　　　　　Defendant(s). | Case No.:  21-CV-01343-W-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DOC. 14]** |

　　　Pending before the Court is Defendant's motion to dismiss Plaintiffs' third and sixth causes of action and strike the request for attorney's fees and a civil penalty. Plaintiffs oppose.

　　　The Court decides the matter on the papers submitted and without oral argument. See Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion [Doc. 14] with leave to amend.

//

//

## I. BACKGROUND

This case arises from Plaintiffs' attendance at a Black Lives Matter (BLM) protest on June 4, 2020.  (*Second Amend. Compl.* ("SAC") ¶ 11.)  Plaintiffs Shayla Piccini, Brandi Matthews, and Jaycie Matthews are related and are "half-black."  (*Id.* ¶¶ 12, 26).  The SAC alleges that at around 9:00 p.m., when Plaintiffs were returning to their vehicles to go home, they encountered police officers on motorcycles.  (*Id.* ¶¶ 13–14.)  As the officers passed, Paccini held out a sign that read, "[n]o justice, no peace, f[…]k the police."  (*Id.*)

The SAC alleges that upon seeing Paccini and the sign, one of the motorcycle officers notified other officers about her sign, actions, appearance, and affiliation with BLM.  (*Id.* ¶ 17.)  Shortly after, an unmarked minivan pulled up, and multiple unidentified men in combat gear, without badges or uniforms, surrounded Piccini.  (*Id.* ¶¶ 18, 20.)  Piccini was then slammed to the ground, handcuffed, tossed into the back of an unmarked minivan, and driven away.  (*Id.* ¶¶ 19–20.)  Afraid and confused, Piccini's cousin began filming the men and asking them who they were and where they were taking her.  (*Id.* ¶ 19.)  At one point, a man yelled, "[i]f you follow us, we will shoot you," or words to that effect.  (*Id.*)  As a result of believing they witnessed their cousin being kidnapped by unidentified armed men, Brandi and Jaycie suffered and continue to suffer psychological injury and emotional distress.  (*Id.* ¶¶ 23, 27.)

On April 21, 2022, Plaintiffs filed the SAC alleging eight causes of action against the City of San Diego and Does 1-25 for: (1) False Arrest under 42 U.S.C. § 1983; (2) Excessive Force under 42 U.S.C. § 1983; (3) Failure to Properly Train and Supervise under 42 U.S.C. § 1983; (4) Battery; (5) Intentional Infliction of Emotional Distress; (6) Violation of the Ralph Act, Cal. Civil Code § 51.7; (7) Violation of the Bane Civil Rights Act, Cal. Civil Code § 52.1; and (8) Negligence.  (*Id.* ¶¶ 28–90.)

On May 5, 2022, the City filed the motion to dismiss the third and sixth causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*P&A* [Doc. 14] 1:27–28.)  The City also moves to strike damages the request for attorney's fees

and civil penalties under the Ralph Act. (*Id.* at 2:1–4.) Plaintiffs oppose the motion. (*See Opp'n* [Doc. 17] 5:7–10; 10:12–15.)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Complaints must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). A court should grant leave to amend unless the plaintiff could not possibly cure defects in the pleading. Knappenberger v. City of Phoenix, 556 F.3d 936, 942 (9th Cir. 2009) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

#### A. Third Cause of Action: 28 U.S.C. § 1983 / Monell

"A municipality may not be held liable under [42 U.S.C. § 1983] solely because it employs a tortfeasor." Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997) (referencing Monell v. Dept. of Social Services, 436 U.S. 658, 689–92 (1978)). Instead, a plaintiff seeking to establish municipal liability under § 1983 must prove that his or her injury was the result of a municipal policy or custom. Id. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403–04.

However, a "local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). In order to establish a section 1983 claim against a local government entity for failing to act to preserve a constitutional right, the plaintiff must establish: (1) his or her constitutional right was violated; (2) the municipality had a policy; (3) the policy "amounts to deliberate indifference" to plaintiff's constitutional right; and (4) the policy is the "moving force behind the constitutional violation." Lockett v. Cty. of Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020) (citing Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011)).

Here, Plaintiffs' Monell cause of action is based on three theories: (1) a City policy; (2) the City's failure to train; and (3) the City's failure to supervise and discipline. The Court will evaluate each theory separately.

#### 1. The City's Use of Force Policy

In support of their Monell cause of action, Plaintiffs cite the City's Use of Force Policy 1.04, § III.D (the "Policy"). (*SAC* ¶ 47.) According to the SAC, the Policy provides that "[o]fficers who are not readily identifiable as police officers, whether on or

off-duty, shall identify themselves as police officers unless identification would jeopardize the safety of the officers or others." (*Id.*)

In its motion, the City argues that "*this alleged policy provision has no relevance* to Plaintiffs' Monell claim allegations in the SAC ¶¶ 42 through 46." (*P&A* 7:14–20, emphasis in original.) Presumably, the City is arguing that the Policy was not the "moving force" behind the violation of Plaintiffs' constitutional rights. Plaintiffs respond that Policy 1.04 is relevant because:

> Plaintiffs have an inalienable right to be free from excessive force, which come in many forms. In the current case, Plaintiffs were stopped by plainclothes officers, forced to get on the ground, had guns drawn on them, and placed in the back of an unmarked van to be driven to some unknown location, all without any verbal or visual identification whatsoever.

(*Opp'n* 6:9–15.) Based on this argument, Plaintiffs appear to be arguing the Policy is related to the violation of their constitutional rights because the officers' failure to identify themselves was part of the excessive force.

Assuming that an officer's failure to identify themselves may constitute excessive force, Plaintiffs' reliance on Policy 1.04 lacks merit. To prevail, the SAC must allege facts showing the policy caused their injury. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997) (citations omitted). But according to the SAC, the Policy 1.04 required the officers to identify themselves. Because the officers' failure to identify themselves violated the policy, it was not the moving force behind Plaintiffs' injury.[1]

//
//
//

---

[1] Plaintiffs also allege Policy 1.04 is vague because it does not define "not readily identifiable as police officers" and does not list "any factors that officers should consider in determining whether they are 'not readily identifiable as police officers.'" (*Opp'n* 5:25–28.) The Court interprets this theory as a failure to train and therefore addresses the issue in the next section of this order.

## 2. Failure to Train

Plaintiffs also allege the City's failure to train its officers regarding the use of force resulted in the violation of their Fourth Amendment rights. (*SAC* ¶ 44.) To succeed on this theory, Plaintiffs must allege (1) inadequate training and (2) "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." See Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted) (bracket in original). In Connick, the Supreme Court explained,

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [Citation omitted.] Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. [Citation omitted.]

Id. at 62. In order to demonstrate a municipality's policymakers had notice that their training program was inadequate, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'…." Id. at 62. For a single constitutional violation to trigger government liability, the violation must be highly predictable and the obvious consequence of an inadequate training program. Id. at 63–64.

The City argues Plaintiffs failed to "plead any facts about any deficiency in the police officers' training program or supervision…." (*P&A* 6:4–8.) In their opposition, Plaintiffs point out that the SAC alleges the City failed to train its officers or provide any guidance in determining whether they are "not readily identifiable as police officers." (*P&A* 5:22–28; *SAC* ¶¶ 47–48.) The Court finds this allegation sufficient to satisfy the first prong of the failure to train analysis.[2]

---

[2] The opposition also contends the SAC alleges "numerous" other failures to train. (*Opp'n* 5:19–20, citing SAC ¶¶ 41–49.) The Court disagrees and finds the SAC only alleges one training deficiency regarding the "not readily identifiable" language.

Next, the City argues Plaintiffs fail to allege it had "any notice … with respect to any alleged deficiency in training or supervision." (*P&A* 6:4–8.)  In response, Plaintiffs point to the following allegation in the SAC, which they assert demonstrates the City had notice: "[o]ther [BLM] protestors have filed lawsuits based on excessive force used by SDPD against them (e.g. Burgess v. City of San Diego, 21-cv-616-MMA-MSB), which suggests that this was … a widespread deficiency in the training and policies of SDPD…." (*Opp'n* 7:1–7, citing *SAC* ¶ 46.)  The Court disagrees with Plaintiffs.

As stated above, to prevail on their Monell claim, Plaintiffs must allege facts indicating the City had notice about the inadequate training for the "readily identifiable" language in Policy 1.04.  The SAC's reference to Burgess and the other BLM excessive force lawsuits is insufficient because there is no indication about the type of excessive force at issue in those cases.  Those cases would only serve as notice to the City if the cases also involved the officers' failure to identify themselves under Policy 1.04.  To the extent the cases involved excessive force of a different nature—i.e., a uniformed officers' use of a taser or deployment of a police canine—the cases would not notify the City that its officers needed training about the "readily identifiable" language.  Instead, at best, the cases would provide notice that officer training on the use of tasers or deployment of canines was inadequate.  Because there are no facts indicating the City had notice about the alleged inadequate training concerning Policy 1.04, Plaintiffs have failed to plead deliberate indifference by the City.

Finally, Plaintiffs also cite two studies by SDSU and NBC San Diego in support of this theory. (*See SAC* ¶ 15.)   According to the SAC, the SDSU study analyzed San Diego police officer traffic stops and found Black and Hispanic people are more likely to be searched and questioned. (*Id.*)  The SAC also alleges the NBC San Diego study showed Black people are five-times more likely to be prosecuted for minor offenses. (*Id.*)  While both studies suggest the SDPD discriminates based on race and color with regard to traffic stops and prosecutions, the studies do not involve the issue of excessive force or

insufficient training for Policy 1.04.  Thus, neither study support the theory that the City was deliberately indifferent to the alleged inadequate training identified in the SAC.

Because the SAC does not allege facts showing the City was "deliberately indifferent" to inadequate training, the Court finds Plaintiffs have failed to plead a claim for Monell liability based on failure to train.

### 3. Failure to Supervise and Discipline

Plaintiffs allege the City has failed to discipline and supervise their employees, and by doing so, has demonstrated deliberate indifference to Plaintiffs' constitutional rights. (*SAC* ¶ 42–45.)  In support of this claim, Plaintiffs again cite the SDSU and NBC San Diego studies.  (*SAC* ¶ 15.)  For the reasons stated above, the Court finds Plaintiffs' reliance on the studies is insufficient to support their claim.

### B. Sixth Cause of Action: Ralph Civil Rights Act, Civ. Code § 51.7

Plaintiffs' sixth cause of action is for violation of the Ralph Civil Rights Act of 1976, Cal. Civil Code § 51.7.  The City argues Plaintiffs' claim is conclusory and should be dismissed.  (*Opp'n* [Doc. 14-1] 11:1–3.)  The Court disagrees.

The Ralph Act was adopted to provide a civil cause of action for victims of hate crimes.  See Campbell v. Feld Entertainment, Inc., 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014).  Under the Ralph Act, all people under California's jurisdiction have the right to be free from "violence… intimidation… because of political affiliation, or… any characteristic… in subdivision (b) or (e)…" Cal. Civ. Code § 51.7.  Section (b) provides that race and color are protected characteristics.  Id.  To prevail on the Ralph Act claim, a plaintiff must show: (1) the defendant committed or threatened violent acts against the plaintiff; (2) the violence or intimidation was motivated by their perception of a protected characteristic; (3) the plaintiff suffered an injury; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  See Knapps v. City of Oakland, 647 F. Supp 2d 1129, 1167 (N.D. Cal. 2009).

Here, the first element of a Ralph Act violation is easily satisfied. The SAC describes the officers "slamming" Piccini to the ground and having said "[i]f you follow us, we will shoot you" to Jaycie and Brandi. (*SAC* ¶¶ 19, 25.) The City does not dispute that Plaintiffs' allegations of Paccini being "slammed" to the ground, "thrown" into a van, and police threatening to shoot Jaycie and Brandi constitute "violent" or "intimidating" conduct. Therefore, the Court finds Plaintiffs' allegations satisfy the first element.

Second, the Ralph Act requires the act of violence or intimidation be motivated by a protected characteristic. See § 51.7. The SAC alleges that while Paccini and Brandi were returning from the BLM protest, an officer saw her protest sign. (*Id.* ¶ 13.) The officer then reported to other officers Paccini's appearance, sign, actions, and affiliation with Black Lives Matter. (*Id.* ¶ 17.) Moments later, Paccini was arrested and thrown into an unmarked van. (*Id.* ¶¶ 18–20.) Brandi was forced to her knees and told if she followed the men, she would be shot. (*Id.* ¶¶ 21–27.) Drawing all reasonable inferences in favor of the Plaintiffs, the SAC sufficiently alleges facts suggesting the encounter was motivated by Paccini and Brandi's race and/or affiliation with BLM.

As to the third and fourth elements of the Ralph Act claim, Plaintiffs properly allege injuries as the result of the City's conduct. Plaintiffs allege physical and emotional injuries resulting from the encounter with the officers that was motivated by their race and/or political affiliation. (*SAC* ¶¶ 28–90.) Therefore, the third and fourth elements of the Ralph Act claim have been satisfied.

For these reasons, the Court finds Plaintiffs' Ralph Act claim sufficiently pled.

### C.   Ralph Act Attorney's Fees and Civil Penalty

The City moves to strike Plaintiffs' request for attorney's fees and civil penalties under their Ralph Act. The City's motion is premised on the dismissal of Plaintiffs' Ralph Act claim. Because the Court has found the Ralph Act claim is sufficiently pled, the City's request will be denied.

### D. Leave to Amend

The City argues that Plaintiffs have failed to submit a sufficient complaint after three attempts, so leave to amend should be denied. (*Opp'n* 2:15–19.) "If a court determines that a complaint should be dismissed, it should give leave to amend unless 'the pleading could not possibly be cured by the allegation of other facts.'" Bailey v. Rite Aid Corp., 2019 WL 4260394, *3 (N.D. Cal. Sept. 9, 2019) (quoting Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990)).

Although Plaintiffs have file three pleadings, this is the first time the Court has evaluated the sufficiency of Plaintiffs' claims. The FAC was filed before the City filed a motion to dismiss or a responsive pleading. (*See FAC* [Doc. 3].) Thus, the Court did not evaluate the sufficiency of the claims in the original Complaint. The FAC was dismissed because Plaintiffs improperly attempted to file another amended complaint in lieu of responding to the City's motion to dismiss the FAC. (*See Order Granting MTD the FAC* [Doc. 11].) The Court will therefore grant Plaintiffs a final opportunity to amend the Monell cause of action.

### IV. CONCLUSION & ORDER

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the City's motion [Doc. 14] and **ORDERS** as follows:

- Plaintiffs' third cause of action is **DISMISSED WITH LEAVE TO AMEND**.
- The Third Amended Complaint is due **on or before July 29, 2022**.
- The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated: July 15, 2022

Hon. Thomas J. Whelan
United States District Judge